

1

2       The following constitutes the order of the Court.
        Signed: March 28, 2019

3

4       _____
        **William J. Lafferty, III**
5       **U.S. Bankruptcy Judge**

6

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11

12  In re                          )    Lead Case No. 18-42169 WJL
                                   )    Chapter 7
13  Geralynne Marie Longmire,      )
                                   )    Adversary Proceeding No. 18-04110
14              Debtor.            )
    ───────────────────────       )    **HEARING HELD**
15                                 )
                                   )    Date:     February 20, 2019
16  Judd Kessler,                  )    Time:     10:30 a.m.
                                   )    Dept.     220
17              Plaintiff,         )
                                   )
18         v.                      )
                                   )
19  Geralynne M. Longmire,         )
                                   )
20              Defendant.         )
    ───────────────────────       )

21

22      **MEMORANDUM DECISION RE MOTIONS FOR SUMMARY JUDGMENT**

23      These matters came for hearing on February 20, 2019, on Judd

24  Kessler's Motion for Summary Judgment (the "Plaintiff's MSJ") on

25  portions of Plaintiff's First Amended Complaint, and Geralynne

26  Longmire's Counter Motion for Summary Judgment (the "Defendant's

27  Cross-Motion").  Alexander Kessler appeared for Plaintiff Judd

28  Kessler ("Plaintiff"); Hugo Torbet appeared for Defendant Geralynne

Longmire ("Defendant").[1]  At the conclusion of oral argument the Court took the matters under submission.

For the reasons set forth below, the Court denies the Plaintiff's MSJ, concluding that (a) with respect to the First Claim, relating to Defendant's alleged statements concerning whether the real property which is the subject of this dispute was her residence, Plaintiff has not demonstrated that there is no genuine dispute concerning material facts related to Defendant's intent to defraud Plaintiff, (b) with respect to the Third Claim, which relates to Defendant's alleged statements concerning her monthly compensation, Plaintiff has not demonstrated that there is no genuine dispute concerning material facts related to his reasonable reliance on those statements, and (c) with respect to Plaintiff's Fourth Claim, for the reasons stated on the record during the February 20 hearing, the Court will grant the Defendant's Motion to Dismiss that claim without leave to amend, thereby rendering the Plaintiff's MSJ moot with respect to that claim.  Because there exist genuine issues of material fact as to many aspects of Plaintiff's claims, and because the parties have had little time to conduct discovery in this matter, no part of this Memorandum constitutes the Court's permanent findings of fact.

In addition to this disposition of Plaintiff's MSJ and Defendant's Cross-Motion, as also explained more fully below, the

---

[1]In addition to the Plaintiff's MSJ and the Defendant's Cross-Motion, the Court also heard argument on Defendant's Motion to Dismiss First Amended Complaint (the "Defendant's MTD").  The Court indicated that, apart from the disposition of the Fourth Claim, it was disinclined to grant Defendant's MTD.  The Court will dispose of the Defendant's MTD by separate order to be entered concurrently with this memorandum.

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 2 of 29

Court wishes to express concerns about an issue that, while neither comprehensively briefed nor fully argued by the parties, appears to be of central importance to this dispute, which is the appropriate measure of damages for the fraud alleged by Plaintiff. It does appear that Plaintiff is seeking damages based upon a "benefit of the bargain" theory, which includes, inter alia, interest accruing under a promissory note at a default rate of 21.80%, while Defendant urges that the measure of damages for a fraud claim arising under Cal. Civ. Code § 3343 would be measured by Plaintiff's "out of pocket" damages, thus potentially drastically reducing the amount of damages recoverable by Plaintiff. The Court is uncertain whether these transactions would fall within the ambit of Cal. Civ. Code § 3343; the Court is also unaware what the parties would otherwise contend would be the appropriate measure of damages under California law for alleged fraud. Accordingly, the Court will require both parties to be prepared to discuss the applicable measure of damages and to propose a means to resolve the issue at a status conference to be set by the Order accompanying this Memorandum.

**BACKGROUND**

The following facts appear to be undisputed.

In the spring of 2016, Defendant needed to refinance her home at 215 El Pinto, Danville, California (the "Property") - a "hard money" loan that Defendant had secured via a lien against the Property was coming due, and Defendant did not have the funds to pay it. Defendant was self-employed, running her own sports marketing company, and while she had a demonstrated ability to earn

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 3 of 29

a high level of compensation, the amount of that compensation was
not necessarily consistent on a month-to-month basis.

   With the assistance of a loan broker, Russell Roesner,
Defendant applied for a loan from Plaintiff as Trustee of Ingodwe
Trust. This loan would also be fairly characterized as "hard
money": it was a short term (all due in six months), high interest
(10.90% per annum pre-default, 21.80% per annum post-default) loan,
and it was to be secured by a first-priority lien against the
Property. Plaintiff asserts, and Defendant does not generally
contest, that as a non-institutional hard-money lender during the
mid-2010's, he was able to dictate the terms and conditions of the
loans he was willing to make. In other words, under the then
prevailing market conditions, he essentially had his pick of
lending opportunities, and he imposed certain pre-conditions to any
loan: (a) he did not wish to make loans secured by his borrower's
residence (based on the protections afforded to homeowner borrowers
under California law, as well as the more emotionally fraught
circumstances, and therefore additional delay and expense, that he
believed would accompany a foreclosure of a borrower's residence);
(b) he wished to make loans only to borrowers with a demonstrable
ability timely and regularly to pay the monthly obligations due
under the high interest rate and short term loans he would make;
and (c) he wished to make only loans that would be secured by real
property with a loan to value ratio of at least 80%. Plaintiff and
Defendant do not appear to agree, however, on the manner and timing
of Defendant's awareness of these conditions to Plaintiff's
lending, or to the ultimate importance of each of these pre-
conditions.

-4-

The parties disagree about some of the aspects of the loan application process and, for economy, the facts surrounding those disagreements will be set forth with particularity in connection with the discussion of the two remaining claims on which Plaintiff seeks summary judgment, i.e., Defendant's alleged misstatements about her residence and her income. However, the parties also seem not to disagree about the remaining portions of the narrative, as set forth below.

Plaintiff agreed to provide a loan to Defendant and the loan closed on or about March 11, 2016. The loan was in the original principal amount of $1,850,000, was all due and payable on October 1, 2016, and called for monthly payments in the amount of $16,804.17 at an initial annual interest rate of 10.90%. Around the time the loan funded, Defendant changed her home address to 110 Kingswood Circle, Danville, California (the "Kingswood Address"). However, after approximately two months without achieving a sale, Defendant changed her home address back to the Property, having never made a payment to Plaintiff pursuant to the note. Plaintiff later learned of Defendant's living in the Property as her residence and, in any event, the parties appear to have worked co-operatively to attempt to sell the Property on favorable terms, pursuant to which Plaintiff appears to have consented for a time to Defendant's occupancy of the Property as her residence. Eventually, Plaintiff acquired the Property via foreclosure in February 2017, via a partial credit bid of $1,500,000, and, after evicting Defendant from the Property, sold the Property in his own right on February 28, 2018 for $1,810,000, leaving an amount unpaid

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 5 of 29

under the note, including default interest, of $1,146,080.57 as of December 3, 2018, around the time of filing Plaintiff's MSJ.

Plaintiff commenced an action in state court in October 2017 for fraud related to the inducement of the loan. Defendant filed a counter-claim for seven causes of action including breach of contract. Plaintiff filed an anti-SLAPP motion in response to the breach of contract claim which was ultimately granted along with attorney's fees and costs in the amount of $8075.72 plus 10% interest.[2] Plaintiff moved for summary judgment on his state law claims on August 1, 2018 and a hearing was set for November 5, 2018. Defendant filed this chapter 7 bankruptcy case on September 18, 2018.

Plaintiff commenced this adversary proceeding on November 13, 2018, seeking, inter alia, a determination that the remaining unpaid obligations under the promissory note, including accumulated unpaid interest at the default rate, are non-dischargeable. More specifically, those claims are: 1) False representations regarding place of residence; 2) False representations regarding the value of the Property; 3) False representations regarding defendant's income; 4) Loan fraud; and 5) Anti-SLAPP Fee Award. Here, the Court is deciding Plaintiff's MSJ on the First, Third, and Fourth Claims, as well as Defendant's Cross-Motion on all five claims,

---

[2] The grant of the anti-SLAPP motion forms the basis for Plaintiff's Fifth Claim, seeking a determination that Defendant's assertion of the allegedly meritless counter claim constituted an intentional injury to Plaintiff's person or property, rendering such claim non-dischargeable under 11 U.S.C. § 523(a)(6). Plaintiff does not seek summary judgment on that claim.

although the Fourth Claim was dismissed without leave to amend at
the hearing on February 20, 2019.

**ANALYSIS**

**I.   The Standard for Granting a Motion for Summary Judgment.**

Summary judgment is proper when "the pleadings, the discovery,
and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(c); Fed. R. Bankr. P. 7056 (establishing that Rule 56 applies
to adversary proceedings). The moving party bears the initial
burden of demonstrating the absence of a genuine issue of material
fact. Once the moving party has met his burden, to avoid summary
judgment the nonmovant must then present an affirmative showing of
evidence to establish a genuine issue of fact. *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23 (1986). All justifiable inferences
are to be construed in favor of the nonmovant. *Anderson v. Liberty
Lobby*, 477 U.S. 242, 253 (1986).

Plaintiff's MSJ seeks a determination that there is no genuine
dispute as to any material fact with respect to the First and Third
Claims, each of which assert that the debt owed to Plaintiff is
non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and (B),
respectively.

**II.  The Standard for Excepting a Debt From Discharge Under 11
U.S.C. § 523(a)(2)**

Section 523(a)(2) provides in pertinent part that a debtor is
not discharged from a debt to the extent that debt was obtained by:

Case: 18-04110   Doc# 55   Filed: 03/28/19   Entered: 03/29/19 09:06:47   Page 7 of 29

(A) false pretenses, a false representation, or actual
                    fraud, other than a statement respecting the Defendant's
                    or an insider's financial condition;

                    (B) use of a statement in writing-

                              (I)  that is materially false;

                              (ii)  respecting the debtor's or an insider's
                              financial condition

                              (iii)  on which the creditor to whom the debtor is
                              liable for such money, property, services, or credit
                              reasonably relied; and

                              (iv)  that the debtor caused to be made or published
                              with the intent to deceive

     Governing law in the Ninth Circuit makes clear that to prevail

on a § 523(a)(2)(A) claim a creditor must prove by a preponderance

of the evidence:

     (1)  Misrepresentation, fraudulent omission or deceptive

          conduct by the Defendant;

     (2)  Knowledge of the falsity or deceptiveness of his

          statement or conduct;

     (3)  An intent to deceive;

     (4)  Justifiable reliance by the creditor on the Defendant's

          conduct or statement;

     (5)  Damage to the creditor proximately caused by its reliance

          on the Defendant's statement or conduct.

     *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (B.A.P. 9th

Cir. 2009), *aff'd*, 407 Fed. Appx. 176 (9th Cir. 2010).

     The standard to prevail on a § 523(a)(2)(B) claim is largely

the same, with the exception that a creditor must show the reliance

on a defendant's written misrepresentation was reasonable as

opposed to justifiable.  *Siriani v. Northwestern Nat. Ins. (In re

Siriani)*, 967 F.2d 302, 304 (9th Cir. 1992).

-8-

**III. Claim 1:  Place of residence - § 523(a)(2)(A)**

    **A.  <u>Misrepresentation of material facts and knowledge of falsity</u>**

A statement can be materially false if it includes information which is "substantially inaccurate" and is of the type that would affect the creditor's decision-making process." *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1470 (9th Cir. 1996) (quoting *First Interstate Bank of Nev. v. Greene (In re Greene)*, 96 B.R. 279, 283 (B.A.P. 9th Cir. 1989)).

Plaintiff's First Claim alleges that Defendant misrepresented to him that "(a) Defendant did not reside at the Subject Property but rather resided at the Kingswood Property, (b) Defendant would not occupy the Subject Property after the Loan was made, (c) the Subject Property was vacant, and (d) the Subject Property was investment property" (Doc. 8, p. 3.) when in fact she did live at the Property during the loan making process, and after the loan was made.  For summary judgment purposes, the Court shall only consider the claims of Defendant's misrepresentation of where she lived during the loan application process.[3]  The Court concludes that the undisputed facts presently available to review show Defendant misrepresented her living situation on her loan application.

Defendant signed documents stating that the Property was not

---

[3] Though there is strenuous argument by Plaintiff that the fact that Defendant having moved back to the Property two months after the loan was funded, as evidenced by Debtor's bankruptcy schedules (Doc. 11-4, Ex. 10,) establishes without dispute her intent to live at the Property after the loan was funded (and establishes that Defendant never moved out of the residence at all), Defendant's intent as to future actions involves factual questions regarding the Defendant's credibility that are inappropriate for disposition at the summary judgment stage. *See Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985).

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 9 of 29

her residence, she did not live at the Property at the time of the loan application, that she did not plan to live there, and that the address was to be used for business purposes only. (Doc. 11-3, Plaintiff Dec. Ex. 1.) Section III of the loan application, entitled "Borrower Information," requested Defendant's "Present Address" and provided checkboxes to indicate whether a borrower owned or rented the present address, as well as space to fill in the number of years a borrower had been living at the present address. After providing a space to fill in a different mailing address, the application prompts "If residing at present address for less than two years, complete the following:" "the following" being spaces to fill in information regarding a borrower's "Former Address." (Doc. 11-3, Ex. 1.)

Defendant's application lists her "Present Address" as the Kingswood Address, and a checked box indicating Defendant rented the "Present Address" for two years. The space meant for a "Former Address" was left blank. (Doc. 11-3, Plaintiff Dec. Ex. 1.) Defendant also signed multiple addenda to the loan application which stated that the Property was not Defendant's primary or secondary residence, and that the loan to be obtained was for business purposes only. (Doc. 11-5.)

Defendant concedes that the Property was her principal residence until sometime shortly before the loan was funded, and that she moved back to the Property about two months after the loan closed, after an attempted sale fell apart. (Doc. 32, p. 7.) However, Defendant contends that her statements within her loan applications were not misrepresentations, because the loan broker, Roesner, knew at the time of making the loan application that those

-10-

statements were false, and in fact directed Defendant to make the false statements. Defendant also contends that she did not make false statements because she did not complete the loan application herself but was instead presented a "pre-filled" loan application by Roesner for her signature. (Doc. 32 p. 2, Doc. 33 p. 4.)

Defendant also points to an email exchange between herself and Roesner as evidence that she could not have misrepresented her living situation, when Plaintiff knew of her living situation throughout the loan application process. During this exchange, Roesner told Defendant that Plaintiff[4] needed her to write a letter stating her intent to move out of the Property. Defendant agreed and told Roesner she would write a letter stating intent to move out of the Property until the loan closed. (Doc. 11-3, Ex. 7.) Seemingly as a result of this exchange, Defendant signed a letter dated March 2015, which appears to have been marked by hand to read "March 2016." The letter stated that the Property was Defendant's

---

[4] Defendant further contends that Roesner was Plaintiff's agent, and concludes without further argument or citation that under Cal. Civ. Code § 2332, such an agency relationship compels the conclusion that all knowledge of Defendant's false statements (and Roesner's instructions to Defendant to make such statements in the first place), can be imputed to Plaintiff. (Doc. 32, p. 13.) However, beyond making a few perfunctory statements concerning the possibility that Roesner might have been Plaintiff's agent (based, in turn, upon a spoliation of evidence argument that is neither at this point sufficiently developed, nor obviously germane to the questions presented here) and having assumed the legal conclusion she would like the Court to endorse, Defendant has made no showing that an agency relationship existed between Roesner and Plaintiff. Nor did Defendant establish that such an agency relationship means any knowledge Roesner had about Defendant's living situation must be imputed to Plaintiff. The Court further notes that Plaintiff also alleged during the February 20 hearing that Roesner was in fact Defendant's agent without making any sort of evidentiary showing. The Court declines to find an agency relationship between Roesner and either party for the reasons stated above.

"home" and that she would be moving to live with her mother until the Property sold. (Doc. 11-3, Ex. 8.) Plaintiff admits that he received the letter prior to making the loan, stating in his Declaration that

> Longmire provided me with the letter dated March 8, 2015, which Roesner represented to me was signed a full year earlier in connection with Longmire's attempt to obtain another loan, and that Longmire had long since moved out of the Subject Property. Roesner assured me that Longmire did not, and would not, reside at the Subject Property and, consistent with the letter, told me that Longmire lived with her elderly mother at the Kingswood Property (Doc. 11-3, p. 7.)

Defendant contends that dating of the letter was not an attempt to mislead but a typographical error which she later corrected when brought to her attention by Plaintiff. (Doc 33, p. 5.)

It appears to the Court at present that there is no genuine dispute that on her loan application, Defendant knowingly misrepresented that the Property was not her residence during the loan application process. Whether or not these statements were made at the behest of Plaintiff or Roesner, there is no dispute that Defendant knew the statements were false.

**B.** **Intent to deceive**

While there does not appear to be a genuine dispute that Defendant knowingly made false statements regarding her residence to obtain a loan on the Property, genuine issues of fact arise regarding Defendant's intent to deceive Plaintiff by making such representations. "Intent is usually proven by circumstantial

-12-

evidence or by inferences drawn from the debtor's conduct.
Reckless indifference or disregard for the truth may be
circumstantial evidence of intent, but is not sufficient, alone, to
constitute fraudulent intent." *In re Retz*, 606 F.3d 1189, 1199
(9th Cir. 2010) (citations omitted).

The evidence presented by both Plaintiff and Defendant show
that in an email exchange between Defendant and Roesner prior to
the closing of the loan, Defendant believed that she was under the
instruction of both Plaintiff and Roesner to misrepresent her
living situation on the loan application. (Doc. 11-4, Exs. 6-7,
Doc. 33-2, Exs. H-1, H-2.) While knowingly misrepresenting her
living situation could be inferred as reckless indifference for
truth, the Court does not find such an inference at present.
Defendant states unequivocally that she believed that Roesner and
Plaintiff were each aware that she had lived at the Property, and
that the "story" to the contrary on which Plaintiff was insisting
was a sham; and with at least some evidentiary support for
Defendant's belief that Plaintiff was in on the "story" that the
Property had not been, was not, and would not be Defendant's
residence, and that she was lying essentially at the behest of
Plaintiff.

The Court cannot find as a matter of undisputed fact that
Defendant intended to deceive Plaintiff. What is at issue for the
Court is not whether Plaintiff actually directed Defendant to
misrepresent her living situation, it is whether there is a genuine
dispute as to Defendant's intent to deceive Plaintiff. The Court
finds such a dispute that will need to be resolved at some later
date.

-13-

## C.    <u>Justifiable Reliance</u>

The Supreme Court has established that the standard for excepting a debt from discharge under § 523(a)(2)(A) is actual, justifiable reliance as opposed to the more stringent standard of reasonable reliance. *Field v. Mans*, 516 U.S. 59 (1995). "In considering whether reliance is justifiable, the court must take into account the knowledge and relationship of the parties." *Romesh Japra, M.D., F.A.C.C. v. Apte (In re Apte)*, 180 B.R. 223, 230 (B.A.P. 9th Cir. 1995)(citations omitted). While there is no independent duty to investigate a defendant's claims under a justifiable reliance standard, a person cannot ignore obvious red flags or "close his eyes to avoid discovery of the truth." *Id.* at 229.

Debtor did not dispute Plaintiff's contention that he actually relied on Plaintiff's representations regarding her residence. Plaintiff still fails to meet his burden on this element and appears to have ignored multiple "red flags" in the form of the loan application and accompanying documents squarely in front of Plaintiff prior to making the loan.

Plaintiff's Amended Complaint and Motion for Summary Judgment both stress that Plaintiff is an experienced hard money lender that does not make loans secured by a borrower's residence, for a variety of plausible reasons. Plaintiff makes clear he had been making hard money loans for many years and had made clear to brokers his unwillingness to make loans secured by a borrower's residence since at least 2010. (Doc. 11-3, p. 3.)

There is no dispute that there was no relationship between the parties prior to Defendant making the loan application, and that

-14-

the parties did not meet or communicate directly during the course
of the loan application process. Plaintiff states that he relied
on Plaintiff's loan application including all addenda, the letter
regarding Debtor's intent to move, and Roesner's assurances
regarding Debtor's residence when making the loan to Defendant.
The face of the loan application, signed and dated March 12, 2016,
stated Defendant had been living at the Kingswood Address for 2
years, and that she lived rent free. (Doc. 11-3, Ex. 1.) As part
of the loan application Defendant signed multiple addenda stating
that the Property was not Defendant's primary or secondary
residence, and that the loan was for business purposes only.

However, the letter Plaintiff received from Defendant prior to
the loan application being signed and submitted to him casts the
statements on the loan application in a troublingly ambiguous
shadow. As discussed above, the letter states plainly that
Defendant considered the Property her "home" and that she was only
moving out of the home to stay with money in the "interim" while
she attempted to sell her home.

While Plaintiff claims that he was informed by Roesner that
this letter was written for a prior lender in 2015 and that
Defendant had "long since moved out of the Subject Property" (Doc.
11-3, p. 7.), it is unclear from the face of the document whether
the letter to Plaintiff was dated March 8, 2015 or March 8, 2016.
The Court need not weigh facts concerning the date of the letter,
because whether the letter was written in 2015 or 2016, it is clear
from that document that Defendant lived in the Property and
considered the Property to be her home less than two years prior to
signing the loan application. The statements of the letter, given

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 15 of
29

to Plaintiff days before the loan closing, directly contradict the application's statements that Defendant had not lived at the Property for at least two years prior to the loan application and that Defendant considered the Property to be a business/investment property as opposed to her residence.

Such disparate statements were squarely in front of Plaintiff at the time he made the loan. Plaintiff has failed to establish a lack of genuine dispute surrounding the justifiability of his reliance on statements regarding Defendant's residence when making the loan.

## IV. Claim 3: Financial Position - § 523(a)(2)(B)

### A. Written misrepresentation of material facts and knowledge of falsity

Plaintiff claims Defendant misrepresented her income to him by listing her monthly base income as $21,375 per month on the loan application. Since the parties do not dispute the income amount listed on the submitted loan application, the focus for the Court is whether there is a genuine dispute that amount was a misrepresentation by the Defendant.

Generally, a statement is respecting the debtor's financial condition "if it has a direct relation to or impact on the debtor's overall financial status." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1762 (2018). A loan application containing information about an applicant's income constitutes a statement in writing respecting the applicant's financial condition for purposes of § 523(a)(2)(B). *See Cashco Fin. Servs. v. McGee (In re McGee)*, 359 B.R. 764, 768 (B.A.P 9th Cir. 2006). Here, Defendant's written

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 16 of 29

statement was a signed loan application stating base monthly income of $21,375 per month which qualifies as a written statement. (Doc. 11-3, Ex. 1.)

"'Material falsity' in a financial statement can be premised upon the inclusion of false information or upon the omission of information about a debtor's financial condition." *First Interstate Bank of Nev. v. Greene (In re Greene)*, 96 B.R. 279, 283 (B.A.P. 9th Cir. 1989) (citing *In re Anzman*, 73 B.R. 156, 163 (Bankr. D. Colo. 1986). The Court concludes that the undisputed facts show Defendant knowingly misrepresented her income on her loan application.

Defendant claims that she did not fill out the loan application, but that it was completed by someone else and provided for her to sign. However, Defendant does concede that she did review the information on the loan application before signing and submitting it to the Plaintiff. On the loan application, the self-employed box was checked, and her monthly base income was listed as $21,375 with no further explanation. In support of her financial condition, the Defendant submitted her tax returns for 2013 and 2014, a letter listing her business projections, and bank statements. Although Defendant claims that the $21,375 per month income statement was a reasonable estimate, these documents show that it was a substantially inaccurate estimate. First, the 2013 tax return shows income of $212,000, or an average of $17,711.50 per month, and it includes a $135,000 "settlement", making it clear that such income was probably not in the ordinary course. (Doc. 33-2, Ex. L-1.) Second, while the 2014 tax return did show an average monthly income of $22,050, Defendant's 2015 and 2016 tax

Case: 18-04110   Doc# 55   Filed: 03/28/19   Entered: 03/29/19 09:06:47   Page 17 of 29

returns revealed average monthly incomes of less than $15,000 per
month and less than $3,500 per month, respectively. (Doc. 33, Ex.
L-2; Doc. 11-5, Ex. 11; Doc. 11-4, Ex. 10.)

As the purpose of the Plaintiff's request for Defendant's
monthly income was to determine her eligibility for repaying the
requested loan, based on the undisputed facts it is clear that the
$21,375 figure listed was a material misrepresentation of the
Defendant's monthly base income.

Defendant contends that even if the statement was false, she
didn't know it to be false because as a self-employed person she
didn't know the exact amount of income she would receive every
month and the amount listed on the application was a reasonable
estimate. Defendant points to her success in sports marketing as
support. Defendant's financial history does provide some support
for this argument (Defendant's average monthly income increased
from less than $18,000 in 2013 to $22,050 in 2014). However, three
days prior to the closing of the loan the Defendant emailed her
accountant to report income of $224,000 (about $18,667 per month)
for 2015. (Doc. 42-2, p. 5.)

Examining the more recent pre-loan financial information
doesn't lend any more support to Defendant's position. Prior to
the closing of the loan, the Defendant provided a letter listing
her projected business revenue sources. (Doc. 33-2, Ex. M-1.) The
letter consisted of a list of six transactions totaling $64,000 in
income, only $10,500 of which came from monthly retainers. *Id.*
The letter also listed four other "Commission pending" transactions
and four "Pending future contract" accounts both without an
associated monetary value. *Id.* While the list did show that the

-18-

Defendant expected to have future income, it merely speculated as to how much it would be and when it would be received.  It did not support the statement that Defendant would make $21,375 per month, regularly, or on average.[5]

### B. <u>Made With Intent to Deceive</u>

If the monthly base income entered on the loan application was a false, material statement, and Defendant knew it to be false, it follows that the statement was made with the intent to deceive the Plaintiff and increase the likelihood of securing the loan.

Considering the facts under the reckless disregard analysis discussed above in Section III.B, we can also find that the intent to deceive was satisfied.  Defendant's tax returns leading up to the loan from Plaintiff demonstrate an inconsistent income stream. As discussed above, Defendant's tax returns show her annual income fluctuating from $212,538 in 2013 to $264,600 in 2014, before

_____

[5]At the hearing on February 20th, 2019, Defendant's counsel clarified that he didn't think there was a single month in Defendant's entire life that she made exactly $21,375.  Defendant provided a loan application to Plaintiff with a projected base monthly income of $21,375 which, without further explanation, implies that she did in fact make $21,375 per month.  Without a history demonstrating that she had ever made exactly $21,375 or that she had consistently made at least that much, it is factually undisputed that Defendant knew $21,375 was not her actual base monthly income, even though she may have believed it was within a range of blue-sky possibilities.

-19-

trending back down to $174,899 in 2015.  Defendant's email disclosing her estimated 2015 income to her accountant, discussed above, demonstrated that Defendant was aware prior to the loan that her income the previous year was well below an average of $21,375 per month, despite not yet having filed her 2015 tax return.

Defendant's monthly bank statements leading up to the loan were also inconsistent.  At the hearing on February 20th, 2019, Defendant referenced her bank statements from December of 2015 and January of 2016 in support of the base monthly income figure, where she made $16,000 and $33,000, respectively, from her sports marketing business.

The letter Defendant provided prior to the commencement of the loan, which listed her projected business revenue sources, lacked certainty.  (Doc. 33-2, Ex. M-1.)  The letter listed fourteen projected accounts but was very brief with detail and appeared to be based in speculation.  For example, monetary values were only attributed to six of the accounts and dates of payment were only attributed to three of them.

These facts lend support to Defendant's argument that self-employment is subject to great fluctuations in monthly income.  But more importantly, these facts and documents highlight the necessity of providing further clarification to the lender about the speculative nature of the $21,375 base monthly income listed on the loan application.  As a sole proprietor and as someone who had been through the hard money loan process before, Defendant had the business sophistication to understand that the base monthly income listed on the loan application would affect Plaintiff's decision-making process.  In neglecting to clarify that her monthly income

Case: 18-04110   Doc# 55   Filed: 03/28/19   Entered: 03/29/19 09:06:47   Page 20 of 29

was volatile and could jump from $16,000 in one month to $33,000 the next, or that her annual income from the immediately preceding year had dropped almost $90,000 from the prior year, Defendant demonstrated a reckless indifference to her actual financial circumstances. Therefore, the undisputed material facts currently before the Court support a finding that the Defendant listed an elevated, false income on her application with the intent to deceive the Plaintiff.

### C. **Reasonable Reliance**

Before addressing the question of reasonable reliance on Defendant's statement concerning her income, the Court finds a genuine dispute regarding whether Plaintiff actually relied on that statement.

Plaintiff asserts that the monthly base income listed on the loan application was a factor that he relied on in his decision to extend financing to Defendant. However, Defendant has raised the possibility (or in her view, the likelihood) that alternative factors, such as the high interest rate on the loan and the value of the house, were the factors on which Plaintiff more likely relied. At the hearing, Plaintiff was not able to refute the Defendant's challenge by pointing to a formula or methodology utilized to determine the sufficiency of $21,375 per month base monthly income, or any other value. Therefore, based upon the facts before the Court, there does appear to be a genuine dispute as to whether Plaintiff actually relied on the income amount listed on the loan application.

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 21 of
29

Even assuming there was actual reliance on the income listed on the loan application, that reliance must be reasonable. Unlike § 523(a)(2)(A), § 523(a)(2)(B) explicitly requires reliance to be based on a "reasonable" standard, which entails an objective, "prudent person" test. *See Field v. Mans*, 516 U.S. at 69-71, 77. "Reasonable reliance is a term courts can apply without additional help" and "is judged in light of the totality of the circumstances on a case-by-case basis." *In re Candland*, 90 F.3d at 1471; *In re McGee*, 359 B.R. at 774 (citing 4 *Collier on Bankruptcy* ¶ 523.08[2][d], at 523-49 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2006)). To rely solely on one statement about the Defendant's income within a financial statement that attempts to demonstrate Defendant's true financial position by setting forth information concerning both income and liabilities, without further investigation, may support a finding of unreasonable reliance. *See Abrams v. Sea Palms Assocs., Ltd. (In re Abrams)*, 229 B.R. 784, 789 (B.A.P. 9th Cir. 1999).

The facts before the Court give rise to genuine dispute as to whether the Plaintiff's reliance on the financial statement was reasonable.

The base monthly income, when considered with the liabilities disclosed on the very same loan application, hardly demonstrates Defendant's ability to make the monthly loan payments. To the contrary, fairly read, by any lender with even a modicum of financial sense, the financial statement makes clear that Defendant would be unable to make the loan payments.

Under the "Liabilities" section of the loan application, Defendant lists two loans with the Department of Education/Navient

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 22 of 29

and two loans with VW Credit. (Doc. 11-3, Ex. 1.) Although it might indicate that error was made in filling out this section, in that the second loan from the Department of Education/Navient and two loans from VW Credit have the "Unpaid Balance" listed in the "Monthly Payment & Months Left to Pay" column and vice versa, it can nonetheless be deduced from these entries that Defendant had monthly loan payment obligations of more than $7,000 per month. These monthly liabilities alone, when added to the $16,804.17 monthly loan payment under Plaintiff's loan, themselves exceed the base monthly income of $21,375 (which also appears to be on a pre-tax basis), even without allowing for reasonable living expenses.

As stated previously, Plaintiff has not provided any information concerning what formula or methodology he employed to determine what would constitute a "sufficient" monthly income timely to service this loan. But surely it must have at the very least exceeded the applicant's obligations under this loan and other pending loan obligations. Based on the facts in front of the Court, without explanation of methodology, it would appear any reliance on the Defendant's financial statement was unreasonable.

Although the undisputed facts before the Court support a finding that Defendant intentionally misrepresented her financial condition to Plaintiff to deceive him, those facts do not demonstrate that Plaintiff actually relied, let alone reasonably relied, on that misrepresentation entitling Plaintiff to summary judgment. Since all elements of § 523(a)(2)(B) must be met and for the reasons stated above, the Court denies the Plaintiff's motion for summary judgment on the Third Claim.

-23-

## V. Cross Motion for Summary Judgment

Defendant's Cross-Motion seeks summary judgment on Plaintiff's First, Second, Third and Fourth Claims.

As the Court indicated at the conclusion of the argument on these matters, the Court is granting the Defendant's Motion to Dismiss against the Fourth Claim, without leave to amend. That disposition will be reflected in an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, to be entered concurrently herewith. The Cross-Motion is thus denied as moot as to the Fourth Claim.

With respect to the remaining claims that are subject to the Defendant's Cross-Motion, the Court notes that Plaintiff's Motion for Summary Judgment seeks relief with respect to the First (false statement concerning residence) and Third (false statement concerning income) Claims, but not with respect to the Second (false statement with respect to real property security). Thus, while the Court's ruling on the First and Third Claims in connection with the Plaintiff's Motion is potentially instructive with respect to the assertions made in the Defendant's Cross-Motion, the Court will address the Defendant's assertions regarding the Second Claim separately.

Having noted that distinction, however, the Court notes that the Cross-Motion makes essentially the same argument with respect to the First, Second and Third Claims: that the Plaintiff will not be able to "prove" that any statements Defendant made were false, and therefore summary judgment in favor of Defendant is appropriate.

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 24 of 29

Defendant may be correct that, ultimately, Plaintiff will not be able to prevail at trial, but the Court is not asking Plaintiff to prove up each element of his Claims. Rather, Defendant's Cross-Motion must persuade the Court that Plaintiff has failed to establish the existence any element essential to those claims, including the element of misrepresentation. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

In addition, Defendant's assertions that none of her statements concerning her residence at the Property, or her income, or the value of the Property, were "false" are unavailing, for two reasons.

First, as explained in detail previously herein in connection with the disposition of Plaintiff's Motion, in the best of all worlds, Defendant's arguments for why her statements about her residency and her income are not false require the Court to accept and find credible her characterizations and contextualization of her statements--an outcome that, while not outside the realm of possibility, is hardly ordained, and would seem, at best, to require the sort of sifting and weighing and assessment of credibility that might be appropriate at trial, but is impossible at summary judgment. *Anderson v. Liberty Lobby, Inc*. 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Stated slightly differently, this sort of "Guilty, but with an explanation" rationale is uniquely unsuited for a determination that Plaintiff will, as a matter of law, never be able to prove an essential element of his claims.

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 25 of 29

Second, while, for the reasons stated above at p. 2 the Court is not currently making any permanent findings of fact with respect to the Plaintiff's MSJ, it certainly appears to the Court that at this stage of the "proof", at least some of the statements made by Defendant with respect to the First Claim (i.e., that Defendant had not resided at the Property for the two years prior to the loan transaction, but had "rented" at her mother's house) and the Third Claim (i.e., that her monthly income was $21,375 without any sort of explanation of qualification) are actually what we would commonly call "false."

Considering these points, it is very difficult to see any merit in Defendant's Cross-Motion on the First or Third Claims.

And Defendant's Cross-Motion fares no better with respect to the Second Claim. As noted previously, Plaintiff is not moving for summary judgment with respect to this claim, which asserts that Defendant falsely reported the value of the Property, which was the security for the loan, in connection with the loan application. Defendant's assertions about the Property and its value, i.e. that Defendant did not make a false statement by saying that the Property was worth $2,500,000, in light of a somewhat recent appraisal and in light of the fact that, on some level, a statement about the worth of real property is usually more "opinion" than "fact," may ultimately prove to have merit. However, those assertions hardly foreclose the matter in the manner necessary to enter summary judgment in her favor. While statements of valuation are generally considered statements of opinion which do not support a fraud claim, "[r]epresentations of value which the declarant does not, in fact, hold or declarations made with reckless indifference

Case: 18-04110   Doc# 55   Filed: 03/28/19   Entered: 03/29/19 09:06:47   Page 26 of 29

for the truth may be found to be fraudulent." *Loomas v. Evans (In re Evans)*, 181 B.R. 508, 512 (Bankr. S.D. Cal) (quoting *Chase Manhattan Bank v. Fordyce*, 56 B.R. 102, 105 (Bankr. M.D. Fla. 1985)).

And as mentioned in Defendant's Cross-Motion, Defendant, because she does not have the burden of persuasion at trial, may prevail on a summary judgment motion if she carries her burden of production by showing "that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. . . . If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything." *Nissan Fire & Marine Ins. v. Fritz Co.* 210 F.3d 1099, 1102-03 (9th Cir. 2000).

However, Defendant's Cross-Motion fails to meet its burden of production because it merely asserts, without any further argument, reasoning, or citation, that Plaintiff is unable to prove that the valuation is false. Such a bare assertion does not establish the absence of dispute regarding whether the appraisal from May 2015 reflected what Defendant knew about the Property's value in 2016. Plaintiff produced no evidence in response to this assertion, nor did Plaintiff have to. At this relatively early stage of litigation, with essentially no facts determined for any purpose as to Plaintiff's Second Claim, it would be thoroughly improper to terminate this aspect of the action via summary judgment on the bare assertion that Plaintiff will be unable to meet his burden concerning valuation of the Property.

For all of these reasons, the Defendant's Cross-Motion is denied with respect to the First, Second and Third Claims.

Case: 18-04110   Doc# 55   Filed: 03/28/19   Entered: 03/29/19 09:06:47   Page 27 of 29

1
2
3                              **\*END OF MEMORANDUM\***
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COURT SERVICE LIST**

Case: 18-04110    Doc# 55    Filed: 03/28/19    Entered: 03/29/19 09:06:47    Page 29 of 29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28